Okay, Mr. Wilczak, you're first, so you might as well come up here. And, Ms. Kriege, if you want to accompany him, you may. And if you need to sit down, Mr. Wilczak, there's a chair there. You can just pull the chair up. Good morning. Good morning. Good morning. Very briefly, over the past almost eight years now, we have contended that the signatures on these documents are skewed, forged, whatever. And then after all this time, we finally had a judge say this, which I think is a good thing. Some of the refinancing documents appear to be dated May 21, 2005. It's two years before we have a reply. Debtors are right that someone has altered the dates to May 21, 2007 and in most cases, initialed them. Excuse me. And it may be that the refinancing documents contain signatures that do not have middle initials. An argument can be made that someone has inserted the middle initials and that is why they do not appear to match the debtor's usual signature, which is basically what we've been saying for eight years now. We believe, well, the judge indicated that they should be called genuine anyway for a whole variety of reasons. One of which is clerical error. But I want to remind everybody that we're talking about 25 documents, an entire loan package. That was not ours. That's what, in the adversarial case, 184 documents. In the bankruptcy case, 100 signed and filed documents. The point is that at this point, the whole thing is moot. The judge has ruled. I think he came to the wrong conclusion, which we believe is clear and should be overturned. We also believe it changes controlling contract law. You just cannot take a signature after a contract is consummated and start playing with it. Very simple. It's just basic contract law. As far as forensic reports goes, we don't need forensic reports anymore either because the judge has said. These signatures have anomalies. They've been tampered with. And no matter what anybody says beyond that, you can only come to two conclusions. You can either follow the law and overturn and prevent, benefit injustice, no foreclosure, no obligation, no debt. That's what we've been saying all this time. We've tried to mediate. It hasn't happened. And the last thing I believe that it gives us is association of facts all the way back to 2012. Every document since 2012 really can't be admitted in a court of law because the judge says they've been altered. Thank you. Thank you very much. Thank you. No questions. Mr. Hawkins, or Mr. Bergar, either one. Thank you, Your Honor. Yes, of course. Yes. Brian Hawkins for the appellee SPS. Your Honor, the issue in this appeal is very simple, and that issue is whether or not the proof of claim was proper. And that issue is whether or not there's evidence to support Judge Johnson's conclusion that the refinance transaction between appellants and country out loans was correct. That's the issue. And in this case, I don't want to belabor the points we made in our brief, but I do want to focus in on the current argument that his conclusion that these signatures may have been modified, that that shows that his ultimate conclusion was incorrect. And what appellants want you to do, Your Honors, they want you to ignore all the other evidence. And that evidence is mountainous, literally. There's evidence that they applied for a loan, that they appeared for a closing, that they signed the loan documents, that these documents were notarized, that they paid the loan for more than a year. Not only that, but the payments they made correspond exactly to the payments due under the loan pursuant to the TILA disclosures. Pursuant to the TILA disclosures, that's true. But I found that confusing because the note provided for interest at 8-point something percent for the first sort of stub month, but then I think it was one and a quarter percent for the first year or so. But the payments on the TILA form remained essentially flat. How did that happen? You know, I don't know exactly how that happened, admittedly, but I do know that the SPS representative testified that the payments they made corresponded to what they were billed under the loan. So that did correspond. And also they asked the court to ignore, Judge Johnson, to ignore the fact that they received more than a quarter of a million dollars from Countrywide Bank in that refinance transaction. And that does not happen absent of a complete and authorized transaction. Again, they paid for it for a year, and once they defaulted, they sent letters to the servicer. And in those letters they referred to it as our loan. They wanted our loan modified. And the court cannot simply ignore that evidence. And while Judge Johnson did find that the signatures may have been modified afterwards, that evidence must be viewed in light and context with everything else. It can't simply be ignored. And Judge Johnson looked at that. He observed the witnesses, Mr. Wilsak and Ms. Wilsak and the appellee's witnesses, and he decided that he made a decision. And there's no error in that decision, much less a clear error, which would be required to reverse that conclusion. So, again, I don't want to belabor the points in our briefs, and I'm happy to answer any questions the Court may have. But otherwise, unless Mr. McGraw would like to say anything, I would be willing to submit on the record, Your Honor. Let me ask you a question. Of course. The assumption you're going on is it's a question of fact. Yes, Your Honor. Is it a question of fact about the effect of a subsequent alteration of the signature? For example, I think Judge Johnson made it fairly clear he thought that somebody later on put in the middle initials. Is the effect of a subsequent alteration, is that a question of fact or is that a question of law? Well, first, that's a very good question. First, I'd like to – I think in my reading of Judge Johnson's order, he said that someone – that that conclusion could have been made. I don't think he made the conclusion that they were modified, because he also stated that Ms. Kozak testified the signatures change over time. But he put that out there as a possibility. I think that if that were to be the case, then you'd fall back on the issue of ratification. And, again, there are ample evidence, there are ample facts showing that even if these were modified after the fact, they approved them, they ratified them. So I think to the extent it is a question of law, I think the doctrine of ratification also supports the affirmation of Judge Johnson's ruling, Your Honor. Thank you for your time. Thank you. Yes, come back up, please, and you can use – let's see how much time you have left. If you'd come up to Mr. Wilsack, please. Normally we only let attorneys speak for other people, but given – and I'm not meaning to say your daughter can't speak. I just think I'd like to have you there so you're both on the same page. So please go ahead. Just one last point, Your Honors. My parents believed that the forgeries invalidate the loan. They never denied that a loan happened. Okay, that's what I was going to ask you, a point I had for you. You did get this money, right? You did get a total of $1.3 million, correct? Well, actually – You got $350,000 in cash, and your existing mortgage was paid off. The $350,000, as I understand it, was tacked on to the end of the loan. Right, but you did get that cashed, correct? That in cash, yes. And at that time you didn't think that was a gift or something, right? No, at that time I thought it was our loan. Right. We didn't discover that – we didn't sign these papers until the beginning of 2012. And so your position is that when the signatures were changed, that turned it into a gift? No, it turned into forgery. It meant you didn't have to repay the money you'd originally borrowed, correct? Absolutely, yes. Because just very quickly, it changes all of contract law. You cannot tamper with signatures. If they wanted me to re-sign and do something or they saw something wrong, okay, well, we don't like the middle initial here and the other alterations of the year. This loan package was developed in 2005. I can go into all the things about the signatures and so on. The judge ruled finally, after all these years, that we did not sign these. These signatures do not match the appellants. And if they don't match the appellants, everything falls apart. That's our point. As far as whatever the money was, we've tried to mediate it. We still will if they want, but from our point of view, it all goes away. Whether it's a gift, whether it's right or wrong, whether all of these things, you cannot basically change contract law. If you do, the whole system falls apart. If anybody, my daughter, myself, anybody in this room or in the world, goes and signs a contract, that's your personal guarantee. It doesn't get changed. Once you sign it and date it, that's it. You leave it alone. That's the law. That's the way I understand the law anyway. I have from years ago. Thank you very much. Thank you for your time. Thank you for coming in. The matter is submitted, and we'll be providing a written decision as soon as we can. Okay. Thank you. Thank you.
judges: Faris, Brand, Gan